# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| TASHIANNE WILBURN et al., and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| ST. JOSEPH COUNTY JUVENILE JUSTICE CENTER *et al.*, | ) ) ) ) |
| Defendants. | ) |

CASE NO. 3:17-CV-331-PPS-MGG

## OPINION AND ORDER

There are two motions before the Court. On June 1, 2018, Plaintiffs, Tashianne Wilburn and Quanan Wilburn, the natural parents and guardians of Z.W., a minor child, filed a motion to strike Defendants' fourth and sixth affirmative defenses pursuant to Rule 12(f). On June 6, 2018, Plaintiffs filed a motion to strike Defendants' jury demand. On June 13, 2018, Defendants, Cynthia Nelson, in her official capacity as the Executive Director of the St. Joseph County Juvenile Justice Center ("JJC"), the Board of County Commissioners of St. Joseph County, and the St. Joseph County Council, filed their responses to both motions. Both motions are now ripe and for the reasons discussed below, the Court **GRANTS** the Wilburns' motion to strike affirmative defenses and Defendants' jury demand.

## I. MOTION TO STRIKE AFFIRMATIVE DEFENSES BASED ON IMMUNITY

### A. Relevant Background

The Wilburns proceed against Defendants at the St. Joseph County Juvenile Justice Center ("JJC") seeking money damages for the solitary confinement of their minor child, Z.W., and declaratory and injunctive relief for all similarly situated juvenile detainees. [DE 12 at 2]. In response, the Defendants asserted *inter alia* the following affirmative defenses:

> 4. Judicial immunity applies to all allegations which are directed at the function of the St. Joseph Probate Court.
>
> 6. Certain allegations of the complaint violate the Eleventh Amendment of the United States.

[DE 19 at 30].

### B. Standard

Rule 12(f) states that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) authorizes the court to strike a pleading or part of a pleading "on its own; or on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." The Wilburns' motion to strike is timely and the Court addresses the merits of the motion below.

Motions to strike are generally disfavored because they "potentially serve only to delay," *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)

(citation omitted). However, "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Id.*

"Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Id.* (citation omitted); *see also Williams v. Jader Fuel*, 944 F.2d 1388, 1400 (7th Cir. 1991). "Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." *Heller Fin., Inc.*, 883 F.2d at 1294 (citation omitted). "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Id.* (citation omitted). "Thus, defenses must set forth a 'short and plain statement,' Fed. R. Civ. P. 8(a), of the defense." *Id.* (citation omitted).

### C. Judicial Immunity Defense

The Wilburns argue that the defense of judicial immunity should be stricken because they are suing Defendants only in their official capacities. [DE 21 at 3]. The assertion that this is solely an official capacity suit is unopposed by the Defendants. "The only immunities available in an official capacity suit are those that may be asserted by the governmental entity itself (*e.g.*, Eleventh Amendment immunity or sovereign immunity)." *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996) (rejecting the contention that a personnel board was a "quasijudicial body" when board members were only sued in their official capacities); *see also Kentucky v. Graham*, 473 U.S. 159, 167. The Wilburns are not suing defendants in their individual capacities. Thus, the Defendants' fourth affirmative defense of judicial immunity is insufficient as a matter of law and should be stricken pursuant to Fed. R. Civ. P. 12(f).

3

### D. Eleventh Amendment Immunity

The Wilburns argue that the defense of Eleventh Amendment Immunity should be stricken because the Eleventh Amendment does not apply to actions against a county or political subdivision. [DE 21 at 4]. The Defendants do not contest this assertion concerning the Board of County Commissioners of St. Joseph County or the St. Joseph County Council, upon which multiple defendants sit. However, Defendants argue that Eleventh Amendment Immunity could potentially apply to Defendant Nelson in her official capacity as Executive Director of the JJC because they argue it is uncertain whether the Executive Director of the JJC is an employee of the St. Joseph County Probate Court or of St. Joseph County. [DE 24 at 4].

The Eleventh Amendment bars suits in federal courts against States and against officials acting as an arm of the state. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). However, the Supreme Court "has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities." *Lake Cty. Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979); *see also Mt. Healthy*, 429 U.S. at 280 (noting the Eleventh Amendment "does not extend to counties"). Moreover, "an official capacity suit is tantamount to a claim against the government entity itself." *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008).

All Defendants are sued only in their official capacities [DE 19 at 3–4], and Defendants admit that they are all elected members of county government or employees of St. Joseph County [DE 19 at 4–5]. Yet Defendants argue a dispute exists as

4

to whether Nelson, in her official capacity as the Executive Director of the JJC, is empowered by the county or the St. Joseph County Probate Court. [DE 24 at 4]. More specifically, the parties dispute whether the St. Joseph County Probate Court is an "arm of the state." The Defendants claim that whether Eleventh Amendment Immunity applies to Nelson depends on whether the county or the probate court empowers the JJC [DE 24 at 4]. Meanwhile, the Wilburns claim the JJC is not a state agency but refer parenthetically to the probate court as a state entity. [DE 26 at 9]. Defendants note that the probate court has the authority to appoint the staff of the JJC. [DE 24 at 2]; *see also* Ind. Code. § 31-31-8-3(c). However, in *Burrus*, the Lottery Commission of Indiana was not entitled to Eleventh Amendment Immunity even though the governor appointed the commission's members and director. *Burrus*, 546 F.3d at 422 (citing *Takle v. Univ. of Wis. Hosp. and Clinics Auth.*, 402 F.3d 768, 770 (7th Cir. 2005)). Thus, even if a state entity appointed the Executive Director of the JJC, that does not automatically make the JJC a state entity. Thus, the primary question for the Court to resolve is whether the JJC is an arm of the state for purposes of Eleventh Amendment Immunity.

"To determine if a particular entity is a state agency, *i.e.*, an arm of the state, courts look at: (1) the extent of the entity's financial autonomy from the state; and (2) the general legal status of the entity." *Tucker v. Williams*, 682 F.3d 654, 659 (7th Cir. 2012) (quoting *Kashani v. Purdue Univ.*, 813 F.2d 843, 845–47 (7th Cir. 1987)). "Of the two, the entity's financial autonomy is the most important factor." *Id.* (citing *Peirick v. Indiana Univ. – Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007)).

5

In evaluating an entity's financial autonomy, courts consider "the extent of state funding, the state's oversight and control of the entity's fiscal affairs, the entity's ability to raise funds independently, whether the state taxes the entity, and whether a judgment against the entity would result in the state increasing its appropriations to the entity." *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008).

In *Burrus*, the "Lottery's complete lack of fiscal reliance upon the state" was plain. *Id.* Per legislative intent in Ind. Code § 4-30-1-2(3), the Lottery funded all of its own operations and did not expose state coffers when adverse judgments were rendered against it. *Id.* Similarly in this case, under Ind. Code § 31-31-8-3(d) "[t]he expenses for the juvenile detention facility shall be paid from the county general fund." *See also Mears v. Lake Cty. Council*, 709 N.E.2d 747, 749 (Ind. Ct. App. 1999) (noting that the "plain language" of the predecessor of Ind. Code § 31-31-8-3(d) required the county to pay all expenses of the juvenile detention facility). This "cuts heavily against" finding that the JJC is a state entity. *See Burrus*, 546 F.3d at 420; *see also Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 48 (1994) (recognizing "the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations").

Thus, the first factor strongly indicates that the JJC is not an arm of the state because it operates "independently from Indiana's state treasury." *See Burrus,* 546 F.3d at 423 (finding that operating independently from the treasury was the "determinative" factor in holding the Lottery Commission was not an arm of the State for purposes of the Eleventh Amendment).

6

The second factor in determining whether the JJC is a state agency is the "general legal status" of the JJC. *See Tucker*, 682 F.3d at 659. In deciding this factor, courts examine whether the governmental entity "served the state as a whole or only a region." *See Kashani*, 813 F.2d at 847. For example, the Eleventh Amendment did not protect a county welfare department that performed duties "on a local level," even though the department was subject to state supervision. *Mackey v. Stanton*, 586 F.2d 1126, 1130–31 (7th Cir. 1978). Ultimately, Defendants have not asserted that the JJC serves beyond the local level to the entire state. As a result, neither the financial autonomy nor the general legal status of the JJC support the conclusion that the Eleventh Amendment shields Nelson from official liability.

Thus, all defendants are county officials who are not protected from official liability by the Eleventh Amendment. Accordingly, Defendants' sixth affirmative defense is insufficient as a matter of law.

### E. Conclusion

The Wilburns are only suing Defendants in their official capacity, precluding judicial immunity. Additionally, Eleventh Amendment immunity does not apply to Defendants because they are county officials. Thus, Defendants' fourth and sixth affirmative defenses should be stricken.

## II. MOTION TO STRIKE JURY DEMAND

### A. Relevant Background

The Wilburns filed this federal action on May 1, 2017, and their complaint did not make a jury demand. [DE 1]. On June 28, 2017, Defendants filed their answer, which did

7

not include a jury demand. [DE 4]. Approximately nine months later, on April 27, 2018, the Wilburns filed their First Amended Class Action Complaint, which did not make a jury demand either. [DE 12]. The amended complaint substituted *inter alia* the original claims solely on behalf of Z.W. with class action claims on behalf of a "Juvenile Class" and two disability subclasses, all of which Z.W. is a member. [DE 12 at 15]. The two disability subclasses are all members of the Juvenile Class with a disability as defined by either the Individuals with Disabilities in Education Act ("IDEA Subclass") or the Americans with Disability Act and/or Section 504 of the Rehabilitation Act of 1973 ("Disability Subclass"). *Id.* The Wilburns assert that Defendants' actions or inactions have violated, continue to violate, and are at risk of violating the future rights of Z.W. and the members of the Juvenile Class and IDEA and Disability Subclasses. [DE 18–19]. Defendants' answer was due on May 11, 2018, per Rule 15(a)(3). However, on May 10, 2018, Defendants filed a motion pursuant to N.D. Ind. L.R. 6-1 seeking to extend their deadline to file an answer until May 25, 2018. [DE 17]. The Court granted that motion. [DE 18]. Yet Defendants filed their Answer to the Amended Complaint, which included the first jury demand in this case, on May 31, 2018, six days after the deadline had passed. [DE 19 at 32].

The Wilburns filed their Motion to Strike Defendant's Jury Demand on June 6, 2018, arguing the jury demand was untimely under Fed. R. Civ. P. 38(b). [DE 22]. Defendants argue the demand was timely, but alternatively ask the Court to consider its response as a Rule 39(b) motion for jury trial despite untimely jury demand. [DE 25]. Defendants contend that the Wilburns' amended complaint is dramatically different than the

8

original complaint such that a jury demand would not have been contemplated before. [DE 25 at 3, 6]. Defendants assert *inter alia* that a class action is a new issue that justifies a jury trial. [DE 25 at 2]. The Wilburns filed their reply on June 18, 2018, arguing class action allegations did not resurrect Defendants' previous waiver of their right to a jury trial. [DE 26 at 3].

### B. Analysis

#### 1. Legal Standard

A party may demand a jury trial by serving the other parties with a written demand within 14 days after the last pleading and filing that demand in accordance with Rule 5(d). Fed. R. Civ. P. 38(b). A party waives a jury trial if its demand is not properly served and filed. Fed. R. Civ. P. 38(d). Yet "the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." Fed. R. Civ. P. 39(b). Courts may grant an untimely jury demand, but only "if a good reason for the belated demand is shown." *CSX Transp., Inc. v. Chi. South Shore & South Bend R.R.*, No. 2:13-CV-285-RL-PRC, 2014 U.S. Dist. LEXIS 83962, *5 (citing *Olympia Express, Inc. v. Linee Aaree Italiane, S.P.A.*, 509 F.3d 347, 352 (7th Cir. 2007)).

#### 2. Waiver Under Fed. R. Civ. P. 38(b) and (d)

The Wilburns argue the deadline for filing a written jury demand expired on July 12, 2017, 14 days after the original answer. [DE 22 at 2]. Defendants admit that they waived a jury trial as to the Wilburns' original complaint but argue that the waiver has no effect on the "newly pled facts and allegations" contained within the Willburns' First Amended Complaint. [DE 25 at 1].

9

As a preliminary matter, the Court notes that Defendant's Answer to the Amended Complaint (the "last pleading") was itself untimely, as it was filed six days after the extended deadline. [DE 19]. However, this untimeliness is not by itself sufficient to constitute a waiver under Fed. R. Civ. P. 38(d). The Seventh Circuit has held that a jury demand filed with a responsive pleading that was 29 days late was timely when no objection to the responsive pleading was filed and the party was not entirely to blame for the delay. *See Dasho v. Susquehanna Corp.*, 461 F.2d 11, 22 (7th Cir. 1972). In contrast, the Seventh Circuit, in *Communications Maintenance v. Motorola, Inc.*, 761 F.2d 1202 (7th Cir. 1985), affirmed a denial of a jury demand filed with a late pleading due to a persistent pattern of behavior that showed the jury demand was "nothing more than a pretext for further delay." *Id.* at 1208. The *Communications Maintenance* plaintiff simultaneously filed the demand and a motion for continuance of trial the day before the trial after "foot-dragging ever since it started [the] lawsuit." *Id.* at 1209. In this case, Defendants' jury demand comes absent the obvious "foot-dragging" present in *Communications Maintenance*. As a result, the Court must examine whether Defendants waived their right to a jury trial completely by failing to file a jury demand in a timely manner during the original pleadings.

It has long been recognized that "supplemental pleadings do not extend the jury demand time, except as to any new issues which are raised for the first time by the supplemental pleadings." *Huff v. Dobbins, Fraker, Tennant, Joy & Perlstein*, 243 F.3d 1086, 1090 (7th Cir. 2001) (citing *Commc'ns Maint.*, 761 F.2d at 1202). It is also "well established that if the original pleadings in an action effectively waive trial by jury under Fed. R.

Civ. Proc. 38(b) and (d), the right to trial by jury of all matters contained in those pleadings cannot be revived by amending the original pleadings." *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977) (citing *Hostrop v. Bd. of Junior Coll. Dist. No. 515*, 525 F.2d 569, 581 (7th Cir. 1975)) (citations omitted). Thus, in order to determine whether the right to a jury was waived as to the Wilburns' amended class action complaint, this Court must decide whether the class action complaint raised "new factual issues" or simply alleged "new legal theories or particularized facts." *Commc'ns Maint.*, 761 F.2d at 1208.

Here, both the original complaint and the amended class action complaint primarily arise because of the Wilburns' concern that the JJC allegedly has a policy and practice of placing juvenile detainees in solitary confinement. [DE 1 at 10; DE 12 at 5]. Despite Defendants' assertion to the contrary, the original complaint did not refer solely to the treatment of Z.W. while at the JJC, but to the policies governing juveniles at the JJC more generally. Specifically, the original complaint alleged that "confinement to a room [is] a method of 'Value Based Behavior Management' for even minor infractions of JJC rules." [DE 1 at 9]. It also alleged that the JJC had and continues to have "policies, customs, and practices that sanctioned the imposition of punitive solitary confinement of children, including Z.W." [DE 1 at 10]. Moreover, the original complaint claimed that solitary confinement is harming juveniles at the JJC. [DE 1 at 11].

These same factual assertions are included in the First Amended Class Action Complaint using slightly different language. For example, the amended complaint alleges the "JJC's use of solitary confinement is part of the JJC's 'Value Based Behavior

11

Management' of juvenile detainees." [DE 12 at 6]. Furthermore, the amended complaint claims that the "JJC has had and still has a policy, practice, and custom of subjecting juvenile detainees to solitary confinement." [DE 12 at 5]. Notably, the amended complaint also claims that Z.W. was placed in solitary confinement and that "[s]olitary confinement of juveniles causes them harm." [DE 12 at 10]. Instead of using the phrase "confinement to a room," the amended complaint references "Room Confinement" and "Holding," among others. [DE 12 at 5]. Even if these differences were deemed to represent new allegations of facts, new particularized facts do not qualify as a new issue for purposes of a jury demand. *See Commc'ns Maint.*, 761 F.2d at 1208.

Finally, the original complaint requested relief for "similarly situated children" under the United States Constitution and the Individuals with Disabilities Act. [DE 1 at 16]. In so doing, the original complaint "put [Defendants] on notice of the underlying facts and basic legal theory . . . upon which plaintiffs sought relief." *AT&T Info. Sys., Inc. v. Favor Ruhl Co.*, No. 86 C 4999, 1987 U.S. Dist. LEXIS 786, *6 (N.D. Ill. 1987) (citing *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1977) (en banc)). The amended pleading by the Wilburns did not alter the "essential factual dispute" between the parties. *See Commc'ns Maint.*, 761 F.2d at 1208. Thus, Defendants waived their right to a jury when they failed to file a timely demand with regards to the original complaint, and the Court proceeds to the inquiry of whether to grant the jury demand pursuant to the Court's discretion under Fed. R. Civ. P. 39(b).

### 3. Good Reason Under Fed. R. Civ. P. 39(b)

The Wilburns argue that Defendants have not shown a good reason for their belated jury demand to justify an exception to their waiver. [DE 22 at 4]. Defendants, on the other hand, argue that the original complaint lacked any reference to a class action, such that counsel for the Defendants did not anticipate the need for a jury demand. [DE 25 at 6]. In support of their motion under Rule 39(b), Defendants cite *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983). In that case, the Seventh Circuit held that denying a belated jury demand by an unrepresented blind prisoner was an abuse of discretion. *Id.* at 766–67. The court thus established the legal standard that "in the absence of strong and compelling reasons to the contrary, untimely jury demands should be granted." *Id.* at 767.

However, the Seventh Circuit was forced to change that standard in the wake of *McNeil v. United States*, 508 U.S. 106 (1993), which held that procedural rules apply equally to unrepresented litigants. *CSX Transp.*, 2014 U.S. Dist. LEXIS 83962, at *3 (citing *Members v. Paige*, 140 F.3d 699, 702–03 (7th Cir. 1998)). Thus, faced once again with a tardy jury demand from an unrepresented inmate, the Seventh Circuit held that the Rule 39(b) inquiry requires "a thoughtful exercise of discretion." *Members*, 140 F.3d at 703. For example, lack of legal assistance may be considered a good reason for favorable discretion under Rule 39(b). *CSX Transp.*, 2014 U.S. Dist. LEXIS 83962, at *4 (citing *Members*, 140 F.3d at 704). As the case law has developed, more recent cases have clarified that courts are only to grant a belated jury demand when "a good reason for

13

the belated demand is shown." *CSX Transp.*, 2014 U.S. Dist. LEXIS 83962, at *5 (citing *Olympia Express,* 509 F.3d at 352).

In *CSX Transportation*, the plaintiff filed an untimely jury demand in a suit for damages due to a freight train derailment. 2014 U.S. Dist. LEXIS 83962 at *1–2. In a detailed historical analysis, the court noted examples where experienced business entities were granted late jury demands. These examples included *Kay Beer Distrib., Inc. v. Energy Brands, Inc.*, No. 07-C-1068, 2009 U.S. Dist. LEXIS 49792 at *10–11 (E.D. Wis. June 12, 2009), where ambiguous language in Fed. R. Civ. P. 81 was involved, and *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187 (7th Cir. 1992), where new attorneys entered a case three years after the filing of the initial complaint. *CSX Transp.*, 2014 U.S. Dist. LEXIS 83962, at *6–7. The *CSX Transportation* court noted that none of those excuses applied to the late jury demand in that case. *Id.* The plaintiff tried to explain the tardy jury demand by arguing that it now believed there were "more disputes with respect to facts and witness credibility than originally anticipated." *Id.* at *7. However, the court ultimately rejected the idea that a few potential particularized facts were a good reason to grant a jury trial under Rule 39(b). *See id.* at *8.

While the parties here are not "experienced business entities" like the ones found in *CSX Transportation*, 2014 U.S. Dist. LEXIS 83962, at *6, the Defendants are sophisticated parties. Defendants are government officials with continuous representation by the same counsel. This is also not a situation such as in *Kotsilieris*, in which the plaintiff's new attorneys did not realize that no jury demand had been made. 966 F.2d at 1187. Neither is this a case where a federal rule's ambiguous language is involved. *Kay Beer*

14

*Distrib.*, 2009 U.S. Dist. LEXIS 49792 at \*10–11.  Nor is this case like *Ford v. Breier*, 71 F.R.D. 195, 197 (E.D. Wis. 1976), cited by Defendants, in which a jury demand was brought by new counsel unopposed and without delay. In their reply, the Wilburns appropriately note that the cases cited by Defendants contain excuses that do not apply in this case. [DE 28 at 5].

Thus, Defendants have failed to provide a good reason for their untimely jury demand as required under Fed. R. Civ. P. 39(b).

### C. Conclusion

Defendants failed to file a timely jury demand pursuant to Rule 38(b) in response to the original complaint. Thus, Defendants waived their right to a jury pursuant to Rule 38(d). Defendants also failed to give a good reason for their untimely jury demand. Accordingly, the Court declines to grant Defendants a jury trial pursuant to Rule 39(b).

## III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** both the Wilburns' motion to strike affirmative defenses [DE 20] and their motion to strike jury demand [DE 22]. The Court **STRIKES** Defendants' fourth and sixth affirmative defenses as pleaded in their answer. [DE 19 at 30]. Additionally, the Court **STRIKES** Defendants' jury demand. [DE 19 at 32].

**SO ORDERED** this 1st day of November 2018.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge