UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TASHIANNE WILBURN, as the natural parent and guardian of Z.W., a minor child, and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 3:17 cv 331-PPS-MGG |
| CYNTHIA NELSON, in her official capacity as the Executive Director of the St. Joseph County Juvenile Justice Center, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

This is a proposed class action involving the alleged policy of the St. Joseph Juvenile Justice Center ("JJC") of placing juvenile detainees in solitary confinement. Plaintiffs, Tashianne Wilburn and Quanan Wilburn, are the parents and guardians of Z.W., a minor child with special needs. When he was 11 years old, Z.W. was held in custody at the JJC and endured extended periods of solitary confinement. Z.W. is the purported class representative. The Wilburns seek an injunction bringing to a halt certain policies of the JJC, but they also seek individual damages for their child, Z.W.

Plaintiffs seek class certification for the following class: "All detainees under the age of 18 years old who have been held or will be held in any form of solitary confinement at the St. Joseph County Juvenile Justice Center since September 7, 2016." [DE 14 at 6.] Additionally, Plaintiffs seek class certification of two subclasses. The

"IDEA Subclass": "All members of the Juvenile Class with a disability, as defined by the Individuals with Disabilities in Education Act ("IDEA"), who have been or will be denied the special education and related support services to which they are entitled under the IDEA." [DE 14 at 6.] And the "Disability Subclass": "All members of the Juvenile Class with psychiatric and/or intellectual disabilities, as defined by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, who have been or will be denied the programs, services, and benefits (including the individualized assessment) mandated by the Americans with Disabilities Act and/or Section 504 of the Rehabilitation Act of 1973." [*Id.*] Because the requirements for a class action have been met, I will grant the class certification, but only as it relates to the request for injunctive relief.

**Background**

Plaintiffs filed their complaint on May 1, 2017, seeking relief under 42 U.S.C. § 1983 for alleged violation of Z.W.'s constitutional rights. [DE 1.] They amended their complaint on April 27, 2018, to include allegations on behalf of the proposed juvenile class and the two subclasses. [DE 12.] On the same day, Plaintiffs filed the instant motion for class certification. [DE 13.]

The JJC includes a juvenile detention facility that can accommodate approximately 90 juvenile detainees when fully operational. [DE 12 ¶ 14.] Although Defendants dispute the use of the term "solitary confinement" [DE 34 at 7-8], the JJC's own literature states that one level of detention is "Level 1" which consists of no

2

papers/books/pictures in room, and the detainee is confined to his or her room (except for a daily hour of exercise).  [DE 14-4 at 4.]  The amended complaint alleges that detainees may even lose their hour out due to various offenses.  [DE 12 ¶ 21.]  Additionally, the detainees at this level eat meals in their rooms, and they do not attend school. [DE 12 ¶¶ 24-25.] This is in contrast to other detainees that attend school each day for at least 5 hours.  [DE 12 ¶ 25.]  Detainees in solitary confinement are put in small locked rooms that resemble jail cells, and are routinely placed in "F-Pod," which have single bed isolation cells.  [DE 12 ¶ 22.]  Additionally, those in solitary confinement cannot communicate in person or by telephone with parents or guardians.  [DE 12 ¶ 26.]  All detainees spend at least their first two days in solitary confinement once admitted to the JJC.  [DE 12 ¶29, DE 14-4 at 4.]

The amended complaint alleges that solitary confinement at the JJC is not only reserved for situations necessary to protect the detainee or others, but also that it is used for punishment.  [DE 12 ¶ 27.]  For example, Plaintiffs allege that solitary confinement is given if detainees violate rules such as:  failure to follow staff instruction, being disrespectful to staff, disorderly conduct, lying/manipulation of staff, and destruction of property.  [DE 12 ¶ 34.]  Ultimately, the amended complaint alleges that "[b]ecause the JJC [] lacks the necessary funds, staffing, and physical facilities to properly care for children, especially those with disabilities and special educational needs . . . the JJC Staff have used and are using solitary confinement as a catchall - a place to warehouse children with disabilities who have difficulty following rules and are in need of special

3

services." [DE 12 ¶ 35.]

When Z.W. was placed in custody at the JJC, he had been diagnosed with a serious emotional disability and qualified for special educational services under his diagnosis of an emotional disability, specific learning disability, and language impairment. [DE 4 ¶ 38.] But he still underwent "extended periods of solitary confinement" and was placed in isolation at the directive of the JJC's Executive Director, Cynthia Nelson. [DE 4 ¶¶ 38, 1, 14-8.] While in confinement, Z.W. reported that he was "going crazy in his room," and he was depressed and stressed. [DE 14-49, 14-8.]

Before getting to the merits, there is a preliminary issue relating to the timeliness of Defendants' opposition brief. As set out earlier, Plaintiffs filed their motion for class certification on April 27, 2018. [DE 13.] As Magistrate Judge Michael Gotsch correctly noted in his opinion denying the motion to stay the motion for class certification, "Plaintiffs' Motion for Class Certification [DE 13] became ripe on May 14, 2018, when Defendants failed to file a response brief despite being afforded fourteen days to do so as required under N.D. Ind. L.R. 7-1(d)(2)(A)." [DE 30 at 1.] He also noted that Defendants gave the Court no reason to reopen the briefing on the pending motion for class certification. [*Id.* at 3.] Without seeking leave to file a belated response, Defendants simply filed their memorandum in opposition on August 22, 2018 - 103 days after the deadline had expired. [DE 34.] There is no doubt that Defendants' memorandum in opposition is untimely. But given the gravity of the issues at stake in this litigation, I will look past the Defendants' lack of diligence and will get to the merits

of the issue.

## DISCUSSION

Rule 23(a) of the Federal Rules of Civil Procedure allows a suit by representative parties on behalf of a class if the plaintiff establishes four requirements: (1) numerosity, (2) common questions of law or fact, (3) typicality, and (4) adequate representation. Fed. R. Civ. P. 23(a).  In addition, the plaintiff must establish at least one prong of Rule 23(b).  Here, Plaintiffs contend that the proposed class and subclasses are appropriate under any one of the three subsections of Rule 23(b).  The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 are met.  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).  For purposes of a motion to certify a class, the court does not reach the merits of the complaint.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.").

**A.    Rule 23(a) Requirements**

**1.    Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  While there is no magic number, this Circuit has found that a class with more than forty members will generally satisfy the numerosity requirement.  *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th

5

Cir. 1969); *Pruitt v. City of Chicago*, 472 F.3d 925, 926-27 (7th Cir. 2006). The JJC's own records show that over 500 juveniles under the age of 18 have been admitted since September 7, 2016, and all detainees spend 48 hours on Level 1 once admitted. [DE 14-4; 14-55 at JJC000473-486; 14-56 at JJC000001, JJC 0000015, JJC 0000043, JJC 0000056, JJC 000070.] Defendants also admit that "each of the residents in that time period have been isolated from other residents and from the general public for various reasons on a daily basis" and that "all juveniles housed at the JJC" have been "confined to their rooms, isolated from other residents and housed in restrictive units at various times throughout each day as a consequence of behavior." [DE 14-54 (Defs.' Interrogatory Answers Nos. 1(B) and 1(D).] Plaintiffs have easily satisfied the numerosity requirement, and the population of the class will just continue to grow, as more detainees are admitted in the future.

What's more, joinder of all members is plainly impracticable. As noted recently in similar class actions based upon juveniles in solitary confinement at a correctional facility, "plaintiffs' class and subclass include all future juvenile pre-trial detainees at the Justice Center, the sort of revolving population that makes joinder of individual members a difficult proposition." *V.W. by and through Williams v. Conway*, 236 F. Supp. 3d 554, 574 (N.D.N.Y. 2017); *see also A.T. by and through Tillman v. Harder*, 298 F. Supp. 3d 391, 407 (N.D.N.Y. 2018) ("[P]laintiffs' proposed class includes all future juveniles who will be detained at the Broome County Jail, precisely the sort of revolving population that often makes joinder of individual members impracticable.").

6

Finally, the Plaintiffs have established that the subclasses also meet the numerosity requirement. Regarding the IDEA Subclass, Plaintiffs cite statistics from the United States Department of Education estimating that between 30% and 60% of juveniles held in detention facilities are qualifying students with disabilities under the IDEA. [DE 14-58.] So, Plaintiffs conservatively estimate that of the more than 500 juveniles placed in the JJC's custody since September 7, 2016, at least 150 were students with an IDEA disability. Similarly, the Disability Subclass also meets the numerosity requirement. The National Center for Mental Health and Juvenile Justice estimates that over 50% of juveniles in the justice system meet the criteria for a diagnosable mental health disorder. [DE 14-59.] Therefore, Plaintiffs conservatively estimate that over half of the more than 500 juveniles placed in the JJC's custody since September 7, 2016, or 250 juveniles, have a disability under the ADA and/or Section 504. As such, joinder is impracticable for the subclasses and class, and the numerosity requirement is met.

   2.   **Commonality**

Next, Rule 23(a) requires Plaintiffs to show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a). Commonality usually exists when the defendants have engaged in standardized conduct with respect to class members. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Defendants contend that the juvenile class definition entails individualized questions of fact (like the different experiences in solitary confinement), and law that produces "unique answers respective of each claimant." [DE 34 at 5.] I disagree. In

7

fact, Plaintiffs have set forth a number of common issues including whether the JJC has a policy, practice or custom of placing juvenile detainees in solitary confinement as punishment or for administrative purposes, whether there is any legitimate government purpose to solitary confinement, whether the JJC's conditions of confinement for juvenile detainees are unconstitutional, whether the defendants acted with deliberate indifference, and whether Defendants deprived the class members of their rights in violation of section 1983 and 1988. [DE 13 ¶11.] Moreover, to the extent Defendants argue the merits of the case (including their argument that "the isolation of juveniles in custody does not constitute a *per se* 8th Amendment violation") [DE 34 at 6], this is a premature attempt to deal with the substance of the case. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 465-66 (2013); *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015); *Flood v. Dominquez*, 270 F.R.D. 413, 417 (N.D. Ind. 2010). In other words, at this point in the proceedings, we are only deciding *how* the case will proceed, not whether the case has any merit or not.

Again looking to *Harder* and *Conway* since they dealt with this same issue and are instructive, those courts found the plaintiffs satisfied the commonality requirement. *Harder*, 298 F. Supp. 3d at 408; *Conway*, 236 F. Supp. 3d at 575-76. *Harder* is worth quoting from extensively, as I fully agree with this analysis:

> Importantly, factual differences in the claims of the class do not preclude a finding of commonality. Rather, what matters is the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Plaintiffs' submissions establish that they have also met their burden on this element. Defendants' opposition submission is shot through with attempted

> explanations for the different reasons that individual juveniles were placed in solitary confinement and/or descriptions of the different circumstances in which such confinement was imposed. But much of that is beside the point. More importantly for purposes of evaluating this element is the fact that plaintiffs allege defendants have engaged in a common course of unlawful conduct toward members of the proposed class and subclasses, that defendants acted with deliberate indifference to the substantial risk of serious harm posed by certain aspects of that common course of conduct, and that defendants have collectively deprived class and subclass members of the education, special services, and other related procedural protections to which they are entitled.

*Harder*, 298 F. Supp. 3d at 408 (citations and quotations omitted) (emphasis in original).

Similarly, in this case, there is a central, common question of whether the JJC's policy and practice of placing juvenile detainees in solitary confinement is permissible. The question is not whether the JJC can make a choice to use solitary confinement given the situation presented to it on an individual case. The issue instead is whether it can be reflexively used as a matter of policy irrespective of the facts presented. That central question will guide the determination of the constitutionality of the Defendants' actions, not the individualized facts of why each detainee may have been placed in solitary confinement and his or her specific experience with it.

### 3. Typicality

A plaintiff's claim is typical of a proposed class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quotation omitted). The inquiry for commonality and typicality is similar, and the Supreme Court has noted that "[t]he commonality and typicality

9

requirements of Rule 23(a) tend to merge." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

The typicality requirement is met in this case because the Plaintiffs challenge the same JJC practices (the use of solitary confinement of juveniles for punishment and administrative purposes), and will need to rely on the same legal theories to prove their claims. This constant of the legal theory controls, even in the face of potential fact differences between the individual detainees. *See Flood*, 270 F.R.D. at 418 (certifying a class of Lake County Jail pretrial detainees, and finding that "just like the commonality inquiry, the typicality requirement is met because the Plaintiffs challenge the same jail practices and will rely on the same legal theories to prove their claim. This controls despite any factual distinctions that may arise.").

Defendants argue that the different degrees of detention and the individualized inquiry that must be conducted to assess whether the confinement violated constitutional standards would destroy typicality. I don't see it that way, for the same reasons I stated above: Plaintiffs are attacking the rote policy of using solitary confinement; they are not challenging the application of it in any given circumstance. Neither did the two analogous juvenile detention cases that already granted certification. *See Conway*, 236 F. Supp. 3d at 576 (finding commonality and typicality because "the members of the class and subclass share the same legal arguments because their claims are based on the common application of certain challenged policies."); *Harder*, 298 F. Supp. 3d at 408 (same).

A similar argument was addressed and rejected in *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609 (N.D. Ill. 2009), where the court certified a class of former pretrial detainees at the county jail challenging a strip search policy. The defendants argued that individual issues such as what each inmate was arrested for or the details of the search destroyed typicality, but the court found "[t]hese issues will not destroy typicality [] because the likelihood of some range of variation in how different groups of new detainees were treated does not undermine the fact that the claims of each class member share a common factual basis and legal theory." *Streeter*, 256 F.R.D. at 613 (quotation omitted).

4. **Adequacy of Representation**

The adequate representation inquiry consists of two parts: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Defendants do not challenge the adequacy of Plaintiffs' counsel. Rather, they contend that Mr. and Mrs. Wilburn (Z.W.'s parents) are not fitting class representatives because they have interests that conflict with the class. [DE 34 at 9-11.] Specifically, Defendants argue that because the parents seek declaratory and injunctive relief on behalf of themselves, the juvenile class, and the subclasses, but also reserve a demand for individualized monetary relief for themselves, this creates a conflict. [*Id.* at 10.]

Both parties cite law outside the Seventh Circuit in support of their position.

11

Defendants cite *Foster v. St. Jude Medical, Inc.*, which involved a motion to certify a class of people who had one of the defendant's medical products implanted into their hearts during bypass surgery. *Foster v. St. Jude Medical, Inc.*, 229 F.R.D. 599 (D. Minn. 2005). In *Foster*, the plaintiffs sought medical monitoring relief for the class, but medical monitoring and damages for themselves. *Id.* at 604. The court was concerned that res judicata could jeopardize the class members' rights to bring compensatory claims in a later case, and found the possible prejudice to the class members was too great to find they had interests aligned with the plaintiffs. *Id.* at 605. In contrast, Plaintiffs cite *Morrow v. Washington*, 277 F.R.D. 172 (E.D. Tex. 2011), which was a putative class action against city officials who allegedly inappropriately targeted motorists based on their race or ethnicity. There, the court dealt with the question of:

> whether res judicata would bar any individual claims for monetary damages based on the individual circumstances of a racially motivated stop of a class member. The Court is persuaded that it would not. The issue to be tried in this case is whether Defendants are engaged in a pattern or practice of targeting racial and ethnic minorities for selective enforcement of traffic laws in violation of the equal protection clause of the Fourteenth Amendment. The ruling on this issue should not foreclose an individual lawsuit for damages based on the individual circumstances of a particular stop. Where plaintiffs allege that the police have engaged in a presumptively invalid procedure, class certification is appropriate since the liability which the plaintiffs seek to establish is based on the operation itself rather than on the circumstances surrounding each individual stop or arrest.

*Morrow,* 277 F.R.D. at 204 (quotation and citation omitted). However, in *Morrow*, the court certified the class for injunctive and declaratory relief pursuant to Rule 23(b)(2), and not monetary damages. (*Id.* at 178, 204.)

I am concerned that Z.W.'s individual claim for monetary damages could put him in a position where his interests are adverse to those of the other class members. I think the safest and easiest way to resolve this concern is to bifurcate Z.W.'s damages claim. That way, Z.W.'s individualized damages claim will be litigated separately from the injunctive and declaratory issues that are undoubtedly common to all members of the class, the risk of conflict is eliminated, and putative class members who wish to pursue individual claims for monetary damages will not be adversely affected.

Although Defendants do not question the adequacy of class counsel, Rule 23(g) requires separate consideration of the appointment of counsel to represent a class. I find that Plaintiffs' counsel, Charles Rice, is experienced in handling Section 1983 cases involving prison conditions, including the successful prosecution of a federal class action involving conditions of confinement at the St. Joseph County Jail in which the certified class consisted of approximately 40,000 members. [DE 14-61, Rice Aff.] Accordingly, Plaintiffs have demonstrated that named counsel will zealously represent and advocate on behalf of the class. As such, under Rule 23(g), the Class Representatives shall be: Patrick David Murphy, Charles Peter Rice, Murphy Rice LLP, 400 Plaza Building, 210 S. Michigan St., South Bend, Indiana 46601.

**B.     Rule 23(b) Requirements**

On top of satisfying the requirements under Rule 23(a), Plaintiffs' proposed class must also satisfy at least one of the three subsections of Rule 23(b). Plaintiffs argue that the proposed class and subclasses are appropriate under any one of the three 23(b)

subsections.  Defendants do not discuss the requirements under Rule 23(b) at all; therefore, they have waived any argument in opposition. *See Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2011) (a party's failure to oppose an argument permits an inference of acquiescence, and "acquiescence operates as a waiver.").

Rule 23(b)(2) applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Here, the plaintiffs have sought declaratory and injunctive relief, and these types of damages are particularly apropos in a case like this, where it seems the main objective is to shut down the JJC's alleged unconstitutional policies and procedures affecting all of the juvenile detainees.  As in *Harder* and *Conway*, "[t]he members of the class and the subclasses would benefit from the same remedy - an order enjoining defendants from application of the policies and practices resulting in the deprivations at issue." *Harder*, 298 F. Supp. 3d at 411; *Conway*, 236 F. Supp. 3d at 577.  Accordingly, I find that Plaintiffs have met their burden on Rule 23(b)(2).

But Plaintiffs also satisfy Rule 23(b)(3), which applies where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Again, as discussed earlier in the opinion, questions of law or fact common to the proposed class members do predominate including whether the JJC has a policy,

14

practice, or custom of keeping juvenile detainees in solitary confinement, and whether those practices are unconstitutional.

Finally, Plaintiffs also satisfy Rule 23(b)(1), which applies where prosecuting separate actions would create a risk of inconsistent or varying adjudications, or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications. Fed. R. Civ. P. 23(b)(1). It is elementary that if each class member were forced to adjudicate his or her claims individually, the risk of inconsistent judgments would be very high. Moreover, it also makes sense that a judgment as to any individual class member's claim for injunctive relief would be dispositive of the claims of the class as a whole - given that all members are fighting the same policies and customs of the JJC.

For all the reasons discussed above, I will grant the motion to certify the class, finding that a class of plaintiffs in this case meets all the prerequisites of Rule 23(a), (b)(1), (b)(2), and (b)(3).

**Conclusion**

For the aforementioned reasons, Plaintiffs' Motion for Class Certification [DE 13] is GRANTED. Accordingly, a class consisting of: "All detainees under the age of 18 years old who have been held or will be held in any form of solitary confinement at the St. Joseph County Juvenile Justice Center since September 7, 2016," is CERTIFIED. The "IDEA Subclass": "All members of the Juvenile Class with a disability, as defined by the

15

Individuals with Disabilities in Education Act ("IDEA"), who have been or will be denied the special education and related support services to which they are entitled under the IDEA" and "Disability Subclass": "All members of the Juvenile Class with psychiatric and/or intellectual disabilities, as defined by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, who have been or will be denied the programs, services, and benefits (including the individualized assessment) mandated by the Americans with Disabilities Act and/or Section 504 of the Rehabilitation Act of 1973"are also CERTIFIED. Z.W.'s individualized monetary damages claim is BIFURCATED. Any claim for individual damages for Z.W. will be STAYED and considered only if a finding of liability is made in the class claim for injunctive relief. Finally, the Class Representatives shall be: Patrick David Murphy, Charles Peter Rice, Murphy Rice LLP, 400 Plaza Building, 210 S. Michigan St., South Bend, Indiana 46601.

**SO ORDERED.**

ENTERED: November 13, 2018.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**